# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**BECKY CANNON,**

        **Plaintiff,**

  v.

**LICKING COUNTY, OHIO,** *et al.***,**

        **Defendants.**

**Case No. 2:17-cv-00004**

**CHIEF JUDGE MARBLEY**

Magistrate Judge Deavers

## OPINION AND ORDER

This matter is before the Court upon Defendants' Motions in Limine (ECF Nos. 38, 39, 40, and 54) ("Defendants' Motions") and Plaintiff's Motions in Limine (ECF Nos. 43–48). The Court issued oral decision on the motions at the Friday, October 18, 2019 final pretrial conference, but sets forth its reasoning more fully herein. For the reasons that follow, the Court **GRANTS** ECF Nos. 38, 39, 40, 43, 44, 45, 46, and 47 and **DENIES** ECF Nos. 48 and 54.

### I.     LEGAL STANDARD

#### A.     Motions in Limine

Courts should "exclude evidence on a motion in limine only when that evidence is determined to be clearly inadmissible on all potential grounds." *Delay v. Rosenthal Collins Grp., LLC*, No. 2:07-CV-568, 2012 WL 5878873, at *2 (S.D. Ohio Nov. 21, 2012). Thus, "[w]hen a court is unable to determine whether or not certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context." *Id.* Orders in limine which exclude broad

categories of evidence should seldom be employed. The better practice is to deal with questions of admissibility as they arise. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); see also *Morrison v. Stephenson*, No. 2:06-CV-283, 2008 WL 343176, at *1 (S.D. Ohio Feb. 5, 2008) ("Courts . . . are generally reluctant to grant broad exclusions of evidence in limine, because a court is almost always better situated during the actual trial to assess the value and utility of evidence."). "Whether or not to grant a motion in limine falls within the sound discretion of the trial court." *Delay*, 2012 WL 5878873, at *2.

### B. Applicable Rules of Evidence

Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant, and therefore generally admissible, so long as it "has any tendency to make a fact more or less probable," and so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. "The standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (internal citation omitted). "[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant." *Id*. at 401. Additionally, evidence can be relevant even if it does not relate to a fact in dispute, provided the evidence supplies background information about a party or issue. *See* Advisory Committee Notes to 1972 Proposed Rules ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding."). Assuming evidence is relevant, Rule 403 nonetheless grants trial courts discretion to exclude that evidence "if its probative value is substantially outweighed" by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Otherwise relevant evidence of character, character trait, crimes, wrongs, or other acts is likewise inadmissible under Rule 404 "to show that on a particular occasion the person acted in

2

accordance with the character." Fed. R. Evid. 404(b). "[E]vidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*.

First, Rule 608 allows reputation or opinion evidence and specific instances of a person's conduct to be offered to prove their truthfulness or untruthfulness under certain circumstances. Fed. R. Evid. 608. Rule 609 allows evidence of a criminal conviction to be admitted to attack a witness's character under certain circumstances. Fed. R. Civ. 609.

Two final evidentiary rules are relevant here. First, under Rule 701, if a witness is not testifying as an expert, opinion testimony is limited to that testimony that is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Second, under Rule 702, an expert's opinion is admissible, by the discretion of the trial court, if: (1) the expert is qualified as such by knowledge, skill, experience, training, or education; (2) the testimony is relevant, meaning it will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) the testimony is reliable, meaning it is based on sufficient facts or data, is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008).

Against this backdrop, the Court considers Defendants' and Plaintiff's Motions.

## II. ANALYSIS

### A. Defendants' Motions in Limine

**1. Mention of all Claims on Which Defendants were Granted Summary Judgment, As Well as Prior Defendants No Longer a Party to the Case Due to Defendants' Partial Grant of Summary Judgment (ECF No. 38)**

Defendants move to exclude any mention of the claims on which Defendants were granted summary judgment, as well as mentions of prior defendants that are no longer a party to the case due to the grant of partial summary judgment. (ECF No. 38). Plaintiff does not object to the exclusion of evidence related to the claims that have been dismissed. (ECF No. 59). Thus, Defendants' uncontested motion to exclude evidence related to dismissed claims is **GRANTED**. Plaintiff does, however, request that they be allowed to introduce evidence or illicit testimony showing that Licking County is indemnifying Officers Meek or Green. For the following reasons, Defendants' Motion is **GRANTED**.

In her Response (ECF No. 59) to Defendants' Motion, Plaintiff argues that she be allowed to introduce evidence or illicit testimony that Licking County is indemnifying Officers Meek and Green. Because this argument was raised in a Response, Defendants have not objected. Nonetheless, this Court finds that any indemnification evidence is irrelevant to the cause of action and might be unduly prejudicial by influencing the jury to attempt to punish Licking County for the actions of Officers Meek and Green. *See Murphy v. Gilman*, Nos. 1:03-cv-145 4:04-cv-103, 2006 WL 3613754, at *3 (W.D. Mich. Dec. 11 2006) ("Where Defendants are being sued in their individual capacity, evidence concerning indemnification is irrelevant for any proper purpose. Further, even if such evidence was relevant, its probative value is substantially outweighed by the danger of unfair prejudice"). It should be noted, however, that if Defendants open the door to the financial situation of Officer Meek or Green by referencing their inability to pay a judgment, then Plaintiff may ask the Court to reconsider the introduction of indemnification evidence. *See Fox-*

*Martin v. County of Cook*, No. 09 C 1690, 2010 WL 4136174, at *5 (N.D. Ill. Oct. 18, 2010) (citing *Smith ex rel. Smith v. Cook County*, 2009 WL 961234, at *8 (N.D. Ill. April 8, 2009)). For the foregoing reasons, Plaintiff may not introduce any evidence or illicit any testimony regarding Licking County's indemnification of Officers Meek and Green.

**2.     All Evidence and References to Prior Litigation Against Defendants, namely, *Shanaberg v. Licking County*, that was Filed Against Deputy Green (ECF No. 39)**

Defendants move to exclude all evidence and references to prior litigation against Defendants, namely—*Shanaberg v. Licking Cty.*, No. 1:16-cv-1209, 2018 WL 4334632 (S.D. Ohio Sept. 11, 2018). (ECF No. 39). Plaintiff does not object to the exclusion of evidence related to prior litigation to which Defendants have been a party. (ECF No. 60). Plaintiff does, however, request that they be allowed to introduce evidence of prior litigation for impeachment purposes should Defendants open the door to their character. *Id*. For the following reasons, Defendants' Motion is **GRANTED**.

Defendants argue that prior litigation is not relevant to the case at hand, and even if it is relevant the probative value is substantially outweighed by the unfair prejudice to Defendants. The Court agrees.

First, the evidence of prior litigation is not relevant because "it is not clear that any such prior conduct, particularly if it has not been proven to have occurred, would make any material fact at issue in this case any more or less likely to have occurred." *Watkins v. Genesee*, No. 13-13678, 2016 WL 727855, at *3 (E.D. Mich. Feb. 24, 2016). Thus, the fact that Defendants were parties to prior litigation does not "ha[ve] any tendency to make a fact more or less probable" in this case. Fed. Rule Evid. 401.

Second, under Rule 404(b) prior acts to prove a person's character are not admissible to prove that a person acted in accordance with that character. This rule is especially poignant in this

5

case because Officer Green was not found guilty of any wrongdoing in the *Shanaberg* case. *See Shanaberg v. Licking County, Ohio*, 936 F.3d 453 (6th Cir. 2019) (affirming grant of summary judgment). Because there was no finding of wrongdoing, it would make little sense to admit evidence of prior litigation in an effort to establish that Officer Green acted in accordance with that character. The *Shanaberg* case would not help the jury determine if there was wrongdoing in the present case. If anything, it could confuse the jury and unfairly prejudice Defendants by creating "several mini-trials within this trial, causing a danger of confusion of issues and undue delay at trial." *Genesee*, at *3.

Third, even if the evidence of prior litigation was relevant and Rule 404(b) was not implicated, "the danger that the jury would afford the prior incidents undue weight as to Defendant [omitted] actions involving Plaintiff [omitted] is substantially outweighed by the danger of unfair prejudice and confusion of the issues." Because the prejudicial value of the prior litigation would substantially outweigh the probative value in this case, the Court could not allow the evidence of prior litigation to be shown to the jury.

For the above reasons, the Court **GRANTS** Defendants' Motion as it relates to prior litigation against Defendants.

Plaintiff, however, does ask that she be allowed to use evidence of prior litigation for impeachment purposes. (ECF No. 60). "[T]he Sixth Circuit has 'consistently recognized the broad scope of allowable impeachment evidence and, more importantly perhaps, the significant discretion left to the trial court in this area'" *Id*. (quoting *United States v. Clingman*, 521 F. App'x 386, 395 (6th Cir. 2013)). Should Defendants open the door by referencing to evidence of prior litigation, impeachment will be permitted. If the occasion arises where impeachment of Defendants testimony is proper by using evidence of prior litigation, the Plaintiff shall inform the

Court of their intent to do so (outside the hearing of the jury) so that the Court can determine whether it is appropriate to use evidence of prior litigation for impeachment purposes.

3. **Licking County Sheriff's Office Use of Force Reports, Other than those Documenting the Underlying Matter, and Defendants' Use of Force Statistics (ECF No. 40)**

Defendants move to exclude all evidence of Licking County Sheriff's Office use of force reports (other than the use of force report associated with this case) and Defendants' use of force statistics. (ECF No. 40). Plaintiff does not object to the exclusion of this evidence (ECF No. 61), and the Court finds no independent basis to exclude. Thus, Defendants' Motion is **GRANTED.**

4. **Dr. Allen's Opinion Testimony Regarding His Treatment and Diagnoses of Plaintiff (ECF No. 54)**

Defendants argue that any opinion testimony by Bradley Allen, M.D. related to the causation of Plaintiff's alleged injuries should be excluded from trial. Plaintiff objects. For the following reasons, Defendants' Motion is **DENIED**.

Defendants believe that the evidence should be excluded pursuant to Fed. R. Civ. P. 26(a) and 37(c)(1). Alternatively, they argue that Rule 403 and 701 bars the testimony. Essentially, Defendants argue that any opinion testimony by Dr. Allen should be excluded because the Plaintiff did not provide a written report from Dr. Allen as required by Fed. Rule Civ. P. 26(a)(2)(B). Therefore, Defendants argue, Dr. Allen is simply a fact witness and should not be allowed to provide any testimony on causation of the damages. Plaintiff responds by arguing that Dr. Allen was not "retained nor specially employed" to provide expert opinion, and thus, the initial disclosure they made pursuant to Fed. Rule Civ. P. 26(a)(2)(B) stating that Dr. Allen would be testifying about "physical injuries" is sufficient to allow testimony. This Court agrees.

At the heart of this disagreement is what constitutes "expert testimony." In *Fielden v. CSX Transp. Inc.* the Sixth Circuit helped define when testimony is to be considered expert testimony.

482 F.3d 866 (6th Cir. 2007). The court in *Fielden* considered several factors, but the key takeaway was that "a report is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from plaintiff's records up to an including the treatment." *Fielden*, at 871. In other words, if a doctor is basing his opinion on what he learned through the treatment of the patient, then no expert report is required. Still, the Sixth Circuit considered other factors. For example, the *Fielden* court was more likely to allow testimony if no procedural fairness issues are at play. The court stated: "[plaintiff] provided sufficient information about the nature of Dr. Fischer's testimony, [defendant] prepared its case accordingly, and Dr. Fischer's testimony did not stray from the notice that [plaintiff] provided." *Id*. Further, the parties "already planned to depose Dr. Fischer as a treating physician and there do not appear to be any additional costs associated with deposing him on the issue of causation." *Id*. Further, when the doctor's testimony falls within their "ordinary medical training" courts are more likely to allow testimony without the submission of an expert report. *Id*. at 872. The Sixth Circuit stressed, however, that the court considers whether the physician "relies on tests, documents, books, videos, or other sources that the physician did not rely upon during his or her treatment of the patient." *Id*. (citing *Mohney v. USA Hockey, Inc.*, 300 F. Supp. 2d 556, 661 (N.D. Ohio 2004)).

    In the case at hand, the facts establish that Plaintiff was not required to file an expert report before Dr. Allen could testify on the causation of the injuries. Dr. Allen was the physician who diagnosed and treated Plaintiff when she went to the hospital. (ECF No. 73-1, Allen Dep. at 32). Thus, in the course of his treatment of Plaintiff, he relied on his ordinary medical training to diagnose and treat the bruises and contusions shown by Plaintiff. As in *Fielden*, Dr. Allen "formed his opinions as to causation at the time he treated [Plaintiff] and there is no evidence that [Dr.

Allen] formed his opinion at the request of [Plaintiff's] counsel." *Fielden*, 482 F.3d at 869. In other words, Dr. Allen "testifie[d] within a permissive core on issues pertaining to treatment, based on what he [omitted] learned through actual treatment and from the plaintiff's records up to an including that treatment." *Id*. at 871. Further, in Plaintiff's initial disclosure, they disclosed Dr. Allen as a witness and stated that he would be testifying on issues related to Plaintiff's "physical injuries" and thus, Defendant cannot argue that they were surprised as to the scope of Dr. Allen's testimony. *See id.* Defendant knew that Dr. Allen was going to testify on issues related to Plaintiff's physical injuries the physical injuries could not "leave[s] room for debate as to the specific ailment and its sources." *Id*. Finally, Dr. Allen's opinion falls squarely within his "ordinary medical training" and is thus testifying as a treating physician and not a retained expert. *Id*. at 872.

This Court does note that during Dr. Allen's deposition he looked at pictures of Plaintiff's injuries. In *Fielden*, the Sixth Circuit distinguished the case before them with a case where a physician relied on video of the evidence to help them determine the cause of the injuries. *Id*. at 871 ("The treating physician in *Mohney* reviewed a videotape of an accident and opined as to the cause of the patient's injury, an opinion based in part, on the tape."). Here, while Dr. Allen looked at photographs of Plaintiff's injuries during the deposition, there is no evidence to suggest that his opinion on causation was based on the photographs and not on his treatment of Plaintiff at the hospital. The photographs surely did not add substantive value to Dr. Allen's opinion, but rather, simply served as a source of recollection for him. Therefore, to the extent that any opinion of Dr. Allen's is based on the photographs viewed after treatment and in anticipation of litigation, such evidence shall be excluded from trial. But to the extent that Dr. Allen's opinion relies on his diagnoses and treatment of Plaintiff, such evidence shall be permitted at trial.

For the foregoing reasons, Defendants' Motion is **DENIED**.

### B. Plaintiff's Motions in Limine

**1. Plaintiff's Prior Criminal Convictions (ECF No. 43)**

Plaintiff argues that all evidence relating to her prior criminal convictions should be excluded from trial. (ECF No. 43). Defendant has not filed an objection. Since this motion is unopposed and because there is no independent basis to allow such evidence, Plaintiff's Motion is **GRANTED**.

**2. Prior Police Incident Reports Involving Becky Cannon and Officers of Licking County Sheriff's Office, which Occurred on October 22, 2010, February 26, 2015, and April 17, 2015 (ECF No. 44)**

Plaintiff argues that all evidence relating to Plaintiff's three prior interactions with the Licking County Sheriff's Office should be excluded from trial. (ECF No. 44). Defendants object to the exclusion of this evidence and particularly object to the exclusion of evidence relating to the interaction that occurred on April 17, 2015. (ECF No. 68). Defendants state that they have no intention of introducing evidence related to the October 22, 2010 or February 26, 2015 interactions. (*Id.*). For the following reasons, Plaintiff's Motion is **GRANTED**.

Plaintiff makes several arguments as to why these prior interactions should be excluded. First, they argue that the evidence is not relevant because prior interactions with police have no tendency to make any material fact more or less probable in this case. They argue that Officers Meek and Green did not know about Plaintiff's prior interactions with the police and therefore that information could have had no bearing on the Officers' decision regarding how much force to use in effecting Plaintiff's arrest. Second, Plaintiff argues that even if the evidence is relevant, that it will unfairly prejudice Plaintiff because "[t]here is a significant danger that the jury will believe Ms. Cannon had issues with law enforcement before which led to force being reasonably used against her in the past, and that April 2016 incident fits a pattern of her behavior that gives rise to

the use of police force against her." (ECF No. 44 at 4). Finally, Plaintiff argues that pursuant to Rule 404 "evidence as to Ms. Cannon's conduct during prior interactions with police is inadmissible to prove she acted the same way or in conformity with those actions on the date of her arrest by Defendants." (ECF No. 44 at 7). Defendants counter that the evidence is admissible because it is relevant, is not unfairly prejudicial, and is not being offered as character propensity evidence.

Because Officers Meek and Green had no knowledge of Plaintiff's interactions with Licking County officers prior to the incident such evidence is irrelevant in determining whether Officers Meek and Green used excessive force.

The next issue is whether Rule 404 requires that the evidence be withheld from trial. Rule 404(b) excludes "[e]vidence of a crime, wrong, or other act ... to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. Rule 404(b). To the extent such evidence is used to show any kind of character propensity, the evidence of prior interactions with the police is barred. Propensity evidence is generally precluded from trial under Rule 404(b). *United States v. Hanshaw*, No. 1:14-cr-120, 2015 WL 5308058, at *1 ("Rule 404's prohibition on using evidence of past or subsequent crimes, wrongs or other acts to show propensity is clear."). However, courts can allow evidence of prior acts if the evidence is used to prove something other than a person's propensity to act a certain way and thus acted in accordance with that propensity on the occasion. *See United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985) ("[Rule 404(b)] is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified.").

Here, Defendants claim that they will not be using the April 17, 2015 interaction to prove that Plaintiff is prone to domestic violence assaults. (ECF No. at 68 at 7). Rather, they claim that

11

they wish to use the domestic violence evidence solely for the purpose of causation and damages. In other words, they intend to only use the evidence to show that the bruises Plaintiff had could have originated from a source other than Officers Meek and Green. This Court disagrees.

On its face, it may seem that if the April 17, 2015 Officer interaction is used to show alternative causation, then Rule 404 is not implicated because the evidence is not being used as character propensity evidence and therefore Defendants are permitted to use the evidence for such reason. However, the only way the alternative causation conclusion can be reached is by asking the jury to speculate that Mr. Cannon was the cause of the injuries in the present case based on his prior history of domestic violence. Thus, while Defendants' stated intention may be to introduce evidence of alternative causation, they are really using the evidence to insinuate that Mr. Cannon abused Plaintiff on or around the date of the incident. And if Defendants use the police interaction on April 17, 2015 to imply that Mr. Cannon abused Plaintiff on or around the date of the incident, then Defendants would be using a prior act of Mr. Cannon to show that he has a propensity for domestic violence and abused Plaintiff in the instant case. This is precisely the type of propensity character evidence that Rule 404(a) and Rule 404(b) seek to preclude. Therefore, the Court will not allow evidence of the April 17, 2015 police interaction to be introduced at trial.

Having determined that the April 17, 2015 police interaction is barred by Rule 404, it is not necessary to determine if the probative value of the evidence is substantially outweighed by the prejudicial value. However, if the Court were to conduct such an analysis, it would find that the probative value of any domestic violence incident that occurred roughly one year earlier is substantially outweighed by the prejudicial impact it may have on the jury. A domestic violence incident that occurred roughly one year prior is not very probative of bruises sustained by Plaintiff in the instant case, but the prejudicial influence on the jury could be substantial.

Because Defendant states they have no intention of introducing evidence from the October 22, 2010 and February 26, 2015 incidents, this Court does not need to decide whether evidence from such interactions can be entered and therefore withholds judgment on any such evidence. For the foregoing reasons, Plaintiff's Motion is **GRANTED**.

3.  **Becky Cannon and Daniel Cannon's receipt of Social Security Disability Benefits (ECF No. 45)**

Plaintiff wishes to have evidence that she and her husband ("Mr. Cannon") receive Social Security Disability Benefits ("SSD Benefits") excluded. Defendants do not intend to submit evidence regarding Mr. Cannon's receipt of such benefits, but they do object to the exclusion of Plaintiff's receipt of SSD Benefits. For the following reasons, Plaintiff's Motion is **GRANTED**.

Plaintiff argues that that her receipt of SSD Benefits is irrelevant to the cause of action and even if it was relevant, would be unfairly prejudicial because it could cause a "white trash" bias against her. (ECF No. 45 at 4). Defendants respond that the receipt of SSD Benefits are relevant because it speaks directly to the amount of damages Plaintiff has suffered. (ECF No. 65 at 3). Further, Defendants contend that voir dire is the proper place to address potential jury bias, not a motion in limine. (*Id*. at 5).

The receipt of SSD Benefits is not relevant in this case because the focus of the case is on whether Officers Meek and Green used excessive force to effect the arrest of Plaintiff. Whether Plaintiff or Mr. Cannon receives SSD Benefits has no impact on this analysis. Further, the prejudicial impact of disability benefits is significant. *See Eichel v. New York Cent. R. Co.*, 375 U.S. 253 (1963) ("In our view the likelihood of misuse by the jury clearly outweighs the value of [disability pension payment] evidence"). Generally, "it is prejudicial error to allow into evidence the wealth of a litigant 'except where position or wealth is necessarily involved in determining the damages sustained.'" *Pease v. Lycoming Engines*, No. 4:10-CV-00843, 2012 WL 162551, at *6

(M.D. Pa. Jan. 19, 2012) (citing *Union Elec. Light & Power Co. v. Snyder Estate Co., et al.*, 65 F.2d 297, 303 (8th Cir.1933)). Because Plaintiff and Mr. Cannon's receipt of SSD Benefits does not impact their claim for compensatory or punitive damages for physical injuries, their receipt of SSD benefits is not relevant, but it does carry significant prejudicial effect. Therefore, the Plaintiff's Motion is **GRANTED**.

**4.     Prior Criminal Record of Becky Cannon's Husband, Daniel Cannon (ECF No. 46)**

Plaintiff wishes to have evidence relating to Mr. Cannon's criminal record excluded from trial. (ECF No. 46). Defendants do not object to the exclusion of the majority of Mr. Cannon's criminal record. (ECF No. 67 at 1). However, Defendants do object to the exclusion of any evidence relating to Mr. Cannon's criminal record as it relates to his domestic violence. (*Id*.). For the following reasons, Plaintiff's Motion is **GRANTED**.

Many of the arguments advanced by Plaintiff and Defendants in this motion are materially similar to the arguments they advanced in the motion to exclude Plaintiff's prior interactions with the police. (ECF No. 44). Because those arguments are fully developed and stated in Section II.B.2 *supra*, the Court need not repeat the arguments here. It is sufficient to state that Plaintiff believes Mr. Cannon's domestic violence record is irrelevant, unfairly prejudicial, and unacceptable character propensity evidence under Rule 404. Defendants believe that the evidence is none of those things, largely because they intend to offer the evidence of prior domestic violence to show alternative causation and extent of damages.

Once again, this evidence shall be excluded. The reasons for this decision are materially similar to the reasons set forth in Section II.B.2 *supra*. The Court does not find it necessary to repeat that logic here.

The remaining evidence of Mr. Cannon's criminal record shall also be excluded from trial for the same reasons Plaintiff's criminal record is excluded. "Between 1990 and 2005, Mr. Cannon

14

was charged with and convicted of several traffic and misdemeanor offenses for speeding, reckless operation, right of way, passing on the right, criminal trespass, open fire violation, misdemeanor assault, and misdemeanor domestic violence." (ECF No. 46 at 2). None of these convictions is probative of Mr. Cannon's truthfulness, nor are they relevant to the case at hand.

Therefore, all evidence related to Mr. Cannon's prior criminal record shall be excluded.

**5.    Prior Domestic Abuse Incidents between Plaintiff and her Husband, Daniel Cannon (ECF No. 47)**

Plaintiff wishes to have all evidence of her and Mr. Cannon's domestic abuse incidents excluded from trial. Defendants object. For the following reasons, Plaintiff's Motion is **GRANTED**.

Once again, the arguments made by Plaintiff and Defendant in this motion are materially similar to the arguments they advanced in the motion to exclude Plaintiff's prior interactions with the police (ECF No. 44) and the motion to exclude Mr. Cannon's prior criminal record (ECF No. 46). Because those arguments are fully developed and stated in Section II.B.2 *supra*, the Court need not repeat the arguments here. It is sufficient to state that Plaintiff believes that the prior instances of domestic violence between her and Mr. Cannon are irrelevant, unfairly prejudicial, and unacceptable character propensity evidence under Rule 404. Defendants believe that the evidence is none of those things, largely because they intend to offer the evidence of prior domestic violence for the purpose of alternative causation and extent of damages.

This evidence shall be excluded. The reasons for this decision are materially similar to the reasons as set forth in Section II.B.2 *supra*. The Court does not find it necessary to repeat that logic here.

Therefore, evidence related to Plaintiff and Mr. Cannon's prior domestic violence incidents shall not be permitted to be admitted at trial. The Plaintiff's Motion is **GRANTED**.

6. **Testimony Related to Dr. Reardon's Opinions Interpreting Plaintiff's Psychological Tests (ECF No. 48)**

Plaintiff wishes to have certain testimony of Dr. James Reardon excluded from trial. Defendants object. For the following reasons, Plaintiff's Motion is **DENIED**.

Plaintiff contends that certain aspects of Dr. Reardon's testimony should be excluded under Rule 403, 608, and 702 because Dr. Reardon's testimony will intrude on the jury's role to determine witness credibility and will unfairly prejudice Plaintiff. Defendant contends that Dr. Reardon's testimony meets the requirements for expert testimony and is necessary to help determine causation of Plaintiff's alleged injuries.

Dr. Reardon conducted several psychological tests on Plaintiff and evaluated her for more than five hours. The stated purpose of the evaluation was to "identify the presence or absence of any psychological disorders or conditions. An additional purpose for the evaluation is to evaluate the relationship between these disorders and conditions, should they exist, and the 04/15-16/16 incident that Becky Cannon was involved in." (ECF No. 48-1, *Evaluation Report* at 3). In this process he "reviewed her medical records, subjected her to a battery of tests, and diagnosed her with Unspecified Personality Disorder, Unspecified Mental Disorder, and Alcohol Use Disorder. "He opined that 'there is no evidence to support that the events of 04/16/16 either caused or significantly aggravated any of these conditions'" (ECF No. 48 at 3) (quoting ECF No. 48-1, *Evaluation Report* at 30). Further "he emphasized that 'it is his opinion that the events of 04/16/16 had minimal, if any, impact on her overall psychological functioning and status.'" (*Id.*) (quoting *Evaluation Report* at 30). In coming to these conclusions, Dr. Reardon evaluated the following tests: the Structed Interview of Reported Symptoms-2 ("SIRS-2"), the Trauma Symptoms Inventory ("TSI-2"), the Million Clinical Multi-Axial Inventory-III ("MCMI-III"), and the Minnesota Multi-Phasic Personality Inventory-2 ("MMPI-2"). In evaluating these test results, Dr.

Reardon offered his opinion and interpretation of the test results.[1]  Plaintiff takes issue with Dr. Reardon's evaluation of these tests because, according to Plaintiff, he "repeatedly attacked Plaintiff's credibility" in the interpretation of the test results.  (ECF No. 48 at 4).

Plaintiff asserts Rule 702 as a method to exclude Dr. Reardon's testimony but does not elaborate on what basis Rule 702 would exclude the testimony.  "The Rule 702 analysis proceeds in three stages: 'First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable.'" *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008)).

Here, Plaintiff does not challenge the qualifications of Dr. Reardon, and this Court can think of no reason as to why Dr. Reardon would be unqualified to provide his opinion.  The testimony that Dr. Reardon offers, while potentially harmful to Plaintiff's case, is certainly relevant.  Dr. Reardon will testify on his interpretations of test results that speak to the alleged damages Plaintiff has suffered and what the causes of those damages may be.  Particularly, with regard to emotional or psychological damages, like the ones at play here, "lay jurors will have

---

[1] Some examples of Dr. Reardon's findings:
- "[S]he demonstrated a pattern of scores on the SIRS-2 that is characteristic of an individual with a genuine psychological disorder who does not appear to be making significant efforts to overstate her symptoms. She is classified in the Genuine Responding category." (ECF No. 48-1, *Evaluation Report* at 25)
- "indicative of an extreme tendency to over-endorse trauma symptoms" (*Id*. at 26)
- "MCMI-III profile must be viewed with extreme caution and, in all likelihood, it represents a significant overreporting of psychological symptoms or problems." (*Id*. at 27)
- "The validity scales of the MMPI-2 suggest that at best her profile is indicative of significant overreporting of problems and difficulties and it may be indicative of 'faking bad' by reporting non-existent signs and symptoms as well as distorting the severity of symptoms." (*Id*.)
- "strong indications of exaggerated reporting of psychological symptoms" and "clear indications of overreporting of psychological symptoms and problems." (*Id.*).
- "It does not appear that Becky Cannon is a reliable informant in terms or her report with regard to this entire situation." (*Id*. at 30).

difficulty determining to what extent a plaintiff was harmed by a particular injury." *Leath v. Webb*, No. 5:17-cv-38-JMH, 2018 WL 4440682 (E.D. Ky. Sept. 17, 2018) (appeal pending). *See also McDonald v. City of Memphis*, No. 2:12-cv-2511-SHL-dkv, 2016 WL 8201168 (W.D. Tenn. Aug. 26, 2016) ("Plaintiffs may not state that Defendant Officer Flake's actions caused them emotional and mental trauma because such a diagnosis requires a medical opinion"). Therefore, to determine what, if any, emotional damage Plaintiff suffered from the incident with Officers Meek and Green medical expert testimony is required. Therefore, Dr. Reardon's testimony is relevant because it will "will assist the trier of fact to understand the evidence or to determine a fact in issue" namely, the nature and cause of Plaintiff's alleged damages. Lastly, Dr. Reardon's testimony is reliable, and Plaintiff admitted as such in their Motion. (ECF No. 48 at 6) ("While for some purposes and in some forums the tests Dr. Reardon administered offer a reliable measure of issues such as malingering or exaggeration."). Plaintiff does state "[t]he very fact that the tests results conflicted on whether Plaintiff was malingering or exaggerating indicates, however, that they are an imperfect measure" and further offer a litany of reasons as to why they think the test results are flawed. (*See* ECF No. 48 at 3–6). However, this does not mean the testing itself is scientifically unreliable. Any issues with Dr. Reardon's analysis of the test can be addressed through cross-examination. *See Kovacic v. Ponstingle*, No. 1:05CV2746, 2014 WL 4715859, at *7 (N.D. Ohio Sept. 22, 2014) ("While plaintiffs clearly take issue with Dr. Afsarifard's evaluation of the test results, his interpretations can be explored on cross-examination"). *See also Best v. Lowe's Home Ctr. Inc.*, 563 F.3d 171, 182 (6th Cir. 2009) ("Any weakness in a witness's methodology will affect the weight that his expert opinion is given at trial, but not its threshold admissibility."). Therefore, this Court finds that Dr. Reardon is qualified to testify to the test results, the test results are relevant,

and the test results are reliable such that the requirements for expert testimony under Rule 702 are satisfied.

Next, Plaintiff contends that even if the testimony is expert testimony, that the evidence is unfairly prejudicial because it will cast doubt on her truthfulness. It is true that "[t]he jury, not an expert, evaluates credibility." *MAR Oil Co. v. Korpan*, 973 F. Supp. 2d 775, 786 (N.D. Ohio 2013). *See also Kovacic*, at *9 ("It is settled that 'a psychiatrist may not testify to the credibility of a witness; that issue is one for the jury.'") (quoting *United States v. Cecil*, 836 F.2d 1431, 1441 (4th Cir. 1988)). However, while an expert cannot testify to the general credibility of a witness, that does not limit their ability offer their opinion on the reliability of test results. *Id*. ("Dr. Afsarifard does not offer an impression on plaintiffs' overall credibility as witnesses. Instead, he merely interprets the results of the MMPI–2 administered to plaintiffs to determine whether plaintiffs' representation of their symptoms and condition was exaggerated."). Like in *Kovacic* Plaintiff has not "suggested that [Dr. Reardon] is unqualified to interpret the [omitted] test results, nor is there any indication that to permit [Dr. Reardon] to do so would be to permit him to testify beyond his expertise." *Id*. Also like in *Kovacic*, if Plaintiff does not like Dr. Reardon's interpretation of the test results, they are free to challenge his interpretations of the tests on cross examination. *Id*. *See also Shea v. Long Island R.R.*, No. 05 Civ. 9768(LLS), 2009 WL 1424115, at *5 (S.D.N.Y. May 21, 2009) ("If certain MMPI–2 scales may be used to challenge [the doctor's] opinions, or there are weaknesses in his reasons for discounting alternative explanations for [plaintiff's] elevated scores, the remedy is not preclusion but cross-examination and presentation of contrary evidence.").

Therefore, Dr. Reardon cannot offer testimony as to Plaintiff's general credibility, because that is the province of the jury. However, there is nothing precluding Dr. Reardon from offering

his interpretation of the test results, and that includes his opinion on whether Plaintiff was exaggerating, overstating, or distorting the severity of her symptoms. Plaintiff's Motion is **DENIED**.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** ECF Nos. 38 (Mention of all Claims on Which Defendants were Granted Summary Judgment, As Well as Prior Defendants No Longer a Party to the Case Due to Defendants' Partial Grant of Summary Judgment), 39 (All Evidence and References to Prior Litigation Against Defendants, namely, *Shanaberg v. Licking County*, that was Filed Against Deputy Green), 40 (Licking County Sheriff's Office Use of Force Reports, Other than those Documenting the Underlying Matter, and Defendants' Use of Force Statistics), 43 (Plaintiff's Prior Criminal Convictions), 44 (Prior Police Incident Reports Involving Becky Cannon and Officers of Licking County Sheriff's Office, which Occurred on October 22, 2010, February 26, 2015, and April 17, 2015), 45 (Becky Cannon and Daniel Cannon's receipt of Social Security Disability Benefits), 46 (Prior Criminal Record of Becky Cannon's Husband, Daniel Cannon), and 47 (Prior Domestic Abuse Incidents between Plaintiff and Mr. Cannon) and **DENIES** ECF Nos. 48 (Testimony Related to Dr. Reardon's Opinions Interpreting Plaintiff's Psychological Tests) and 54 (Dr. Allen's Opinion Testimony Regarding His Treatment and Diagnoses of Plaintiff). The Clerk shall remove Documents 38, 39, 40, 43, 44, 45, 46, 47, 48, and 54, from the Court's pending motions list.

**IT IS SO ORDERED.**

    */s/ Algenon L. Marbley*
**ALGENON L. MARBLEY
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

**DATED: October 25, 2019**